No. 03-814

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 343

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

CRAIG STEEN,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                      In and for the County of Gallatin, Cause No. DC 03-120,
                      The Honorable Mike Salvagni, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

              Lucas J. Foust, Foust Law Office, PLLC, Bozeman, Montana

       For Respondent:

              Hon. Mike McGrath, Attorney General; Robert Stutz,
              Assistant Attorney General, Helena, Montana

              Marty Lambert, Gallatin County Attorney, Bozeman, Montana


                  Submitted on Briefs:  August 17, 2004

                        Decided:  December 7, 2004

Filed:

_____
                        Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Craig Steen (Steen) appeals from an order of the Eighteenth Judicial District Court, Gallatin County, denying his motion to suppress evidence. We affirm.

¶2    The one issue on appeal is whether the District Court erred when it denied Steen's motion to suppress evidence on the basis that the police officer did not have particularized suspicion to justify a traffic stop.

## BACKGROUND

¶3    On June 8, 2002, at approximately 1:10 a.m., Bozeman Police Officer Doug Lichte (Officer Lichte) was traveling east on Main Street in Bozeman, Montana, when he observed a full-size pickup make a wide left hand turn at the intersection of Broadway and Main Street, in violation of § 61-8-333(1)(b), MCA (2001). Broadway is a two lane roadway with one lane for northbound travel and another lane for southbound travel. Main Street is a four lane arterial street with two lanes for eastbound traffic and two lanes for westbound traffic. The intersection of Broadway and Main Street is not perpendicular, and is in fact, slightly acute. Steen turned left from the proper lane of Broadway into the outside eastbound lane of Main Street rather than the inner closest lane, thereby violating § 61-8-333(1)(b), MCA (2001). After making the turn, Steen swerved to straddle the center of both eastbound lanes. After witnessing the pickup travel for a period of approximately five seconds, Officer Lichte stopped Steen. Officer Lichte's investigation ultimately led him to charge Steen with DUI.

¶4    Steen submitted a Brief in Support of Motion to Suppress in Municipal Court to dismiss all evidence derived from his stop by Officer Lichte, which the Municipal Court

2

denied after conducting a hearing. Steen pled guilty to DUI and reserved his right to appeal from the denial of the motion. The District Court affirmed the Municipal Court in its denial of Steen's motion. We affirm the District Court.

## STANDARD OF REVIEW

¶5 We review a district court's denial of a motion to suppress evidence to determine whether the court's finding that the officer involved had a particularized suspicion to justify the investigatory stop is clearly erroneous. *State v. Farabee*, 2000 MT 265, ¶ 11, 302 Mont. 29, ¶ 11, 22 P.3d 175, ¶ 11. We review a district court's conclusions of law regarding a motion to suppress evidence to determine whether the district court's interpretation of the law was correct. *Farabee*, ¶ 11.

## DISCUSSION

¶6 Whether the District Court erred when it denied Steen's motion to suppress evidence on the basis that the police officer did not have particularized suspicion to justify a traffic stop.

¶7 Steen contends the District Court erred when it denied his Motion to Suppress because Officer Lichte did not have the particularized suspicion that Steen was committing an offense when he turned left from Broadway onto Main Street. To determine particularized suspicion to justify an investigative stop, the State must show: (1) objective data from which an experienced officer could make certain inferences, and (2) a resulting suspicion that the occupant of the vehicle in question is or has been engaged in some wrongdoing. *Moore v. State*, 2002 MT 315, ¶ 10, 313 Mont. 126, ¶ 10, 61 P.3d 746, ¶ 10. "Whether a

3

particularized suspicion exists is a question of fact dependent on the totality of the circumstances surrounding the investigative stop." *Moore*, ¶ 10.

¶8 Section 61-8-336, MCA (2001), outlines the law for turning movements and required signals. The pertinent part, as it stood in 2001 when Steen was stopped, states:

> (1) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required by 61-8-333 . . . or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.

Section 61-8-333, MCA, as it stood in 2001 when Steen was stopped, provides for the required position and method of turning at an intersection:

> (1) The driver of a vehicle intending to turn at an intersection shall do so as follows:
>
> . . . .
>
> (b) Left turn on two-way roadways. At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

¶9 Steen concedes he entered into the right hand lane of Main Street when turning left off Broadway, but that under the traffic code at the time of his stop, a motorist's left turn is to be made in the left portion of the center of the intersection "whenever practicable." Steen argues "it was not practicable for him to remain in the left hand portion of the lane due to the

4

extremely tight angle of the turn." In fact, Steen notes, "[i]f the angle of the intersection of Broadway and Main Street in Bozeman is anything other than acute, I must be obtuse." Further, Steen maintains, pursuant to § 61-8-336(1), MCA, he had no obligation to remain in the left lane as no other traffic was affected by this travel. Therefore, Steen contends, that in light of the totality of the circumstances, his driving could not be characterized as erratic, which makes Officer Lichte's stop illegal.

¶10 The State argues the totality of the circumstances demonstrate a particularized suspicion existed to stop Steen for a traffic offense because Officer Lichte had objective data from which he could make certain inferences when he witnessed Steen make a wide left turn off Broadway into the outside lane, rather than the inside lane, of Main Street. Further, the State maintains, Officer Lichte properly had a resulting suspicion Steen had committed a traffic offense because a turn into the inside lane was practicable. Additionally, the State asserts Steen's argument would improperly render the last sentence of § 61-8-333(1)(b), MCA, superfluous. We agree with the State.

¶11 Both parties agree Steen made a wide turn into the outside eastbound lane rather than the inside eastbound lane, he did not enter the inside lane and he then made an unsignaled lane change to the inside lane. It is also agreed upon that Steen straddled the center of both eastbound lanes after swerving from the outside lane. We agree with the State that these facts are objective data from which an experienced officer could make certain inferences and, thus, satisfy the first prong of the particularized suspicion test.

¶12 Therefore, the focus of this appeal is the second prong of the particularized suspicion

5

test, that is, whether Officer Lichte suspected Steen had engaged in wrongdoing. This determination rests on whether a proper turn into the inside driving lane was "practicable." The intersection of Broadway and Main Street is not a 90 degree angle. Steen argues his pickup had difficulty making the left hand turn regardless of how hard he pulled on the steering wheel and as such, it was not practicable for him to stay in the left hand lane. The State asserts Steen's pickup should have had no difficulty making the turn. The District Court found, after a hearing where expert testimony was presented, that Steen "made an improper left turn from a two lane street to a four lane street. . . . Steen then straddled the two lanes before bringing his truck fully within the proper lane."

¶13 Whether a particularized suspicion exists is a question of fact dependent on the totality of the circumstances surrounding the investigative stop. Officer Lichte, at approximately 1:10 a.m., observed Steen turn from Broadway into the outside eastbound lane rather than the inner closest lane of Main Street, swerve back to the center of both lanes and straddle both eastbound lanes. After a review of the record, we conclude the Municipal Court and the District Court correctly determined the evidence presented was enough for Officer Lichte to suspect Steen had engaged in wrongdoing–violating § 61-8-333, MCA– which was enough to justify the investigatory stop.

¶14 We note that Steen also argues Officer Lichte misunderstood the statutes, and as a result, Officer Lichte could not have had a particularized suspicion to stop Steen. However, to have "a particularized suspicion does not require certainty on the part of the law enforcement officer." *Farabee*, ¶ 19. We disagree with Steen because Officer Lichte

6

observed Steen making a wide turn in violation of § 61-8-333(1)(b), MCA, thus we conclude Officer Lichte correctly understood Steen failed to correctly make the left hand turn to the inside lane, as it was practicable to do so.

¶15    Further, Steen maintains he could move into either lane of travel eastbound without violating § 61-8-333(1)(b), MCA, because other traffic would not be affected by his movement pursuant to § 61-8-336(1), MCA.  However, we agree with the State that this argument renders the last sentence of § 61-8-333(1)(b), MCA, superfluous by eliminating the default requirement that left turns be made to the inside lane of travel, unless this is impracticable.  "We are required to avoid any statutory interpretation that renders any sections of the statute superfluous and does not give effect to all the words used." *State v. Berger* (1993), 259 Mont. 364, 367, 856 P.2d 552, 554.  Because we conclude the evidence in this case demonstrates a proper turn to the inside lane was practicable, it is not necessary to analyze this argument.

¶16    Steen also points us to *State v. Lafferty*, 1998 MT 247, 291 Mont. 157, 967 P.2d 363, and *Morris v. State*, 2001 MT 13, 304 Mont. 114, 18 P.3d 1003, to support his position that his improper turn does not constitute "erratic driving."  However, because we conclude Officer Lichte had enough particularized suspicion to justify a traffic stop based on Steen's illegal left hand turn alone, and not the rest of his erratic driving, we decline to address this argument.

¶17    The District Court's finding that Officer Lichte had a particularized suspicion to justify the investigatory stop on Steen was not in error and its conclusion to deny Steen's

motion to suppress evidence was correct.  Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE