No. 04-584

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 101

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

RONALD W. BRITT,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Twelfth Judicial District,
In and for the County of Hill, Cause No. DC-03-074,
The Honorable David G. Rice, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Brian Lilletvedt, Bosch, Kuhr, Dugdale, Martin & Kaze, PLLP, Havre, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Jon Ellingson, Assistant Attorney General, Helena, Montana

                Cyndee Peterson, County Attorney; Gina Bishop, Deputy County Attorney, Havre, Montana


Submitted on Briefs:  March 30, 2005

Decided:   April 22, 2005

Filed:



_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Ronald W. Britt (Britt) appeals from the denial of his Motion to Suppress Evidence by the Twelfth Judicial District Court, Hill County. We affirm.

¶2 We must address whether the District Court properly denied Britt's motion to suppress evidence based upon the police officer's particularized suspicion to justify an investigative stop.

BACKGROUND

¶3 Pete Kuhr (Kuhr), a Havre area rancher, called the Hill County Sheriff's Department and reported that a car with three occupants had been parked five to six miles outside of Havre along a gravel road for most of the day. Kuhr told the dispatcher that he had stopped and asked the occupants if they needed help and the occupants had advised him that everything was okay. The dispatcher relayed the location and license plate number to Deputy Monte Reichelt (Reichelt), an officer with 27 years of experience.

¶4 Reichelt arrived at the intersection where the car initially had been reported by the dispatcher approximately forty-five minutes after receiving the call. Although the car was not at the intersection, Reichelt did find the car parked to the side of the same gravel road, pointing southbound, and next to a shelter belt of trees. The car drove onto the road as Reichelt approached, proceeded past him, and turned east onto another road toward Havre.

¶5 Reichelt saw that the car had the same license plate number and noted that a Native American male was driving the car with a Caucasian female passenger. After identifying the car, Reichelt continued on for a short distance until he could turn around and catch up to it. During that brief moment of time, until he came to the corner and turned east himself,

2

Reichelt lost sight of the car behind a shelter belt of trees. When he caught up and approached the car, Reichelt observed the car driving near the center of the gravel road, and although he did not specifically observe the occupants do so, he saw that they had switched drivers. Reichelt then turned on his siren and stopped the car. His subsequent search of the car uncovered illegal drugs and drug paraphernalia.

¶6 The State charged Britt with criminal possession of dangerous drugs, possession of drug paraphernalia, and driving while his license was suspended or revoked. Britt moved to suppress the evidence found in his car based on Reichelt's lack of particularized suspicion to justify the investigatory stop. At the hearing, Reichelt testified about the stop and James Oliver Catt, Jr., a defendant witness who investigated the gravel road at issue, also testified. The District Court denied Britt's motion and Britt entered into a plea agreement reserving his right to appeal the denial of his motion to suppress evidence. Britt exercises that right in this appeal.

## STANDARD OF REVIEW

¶7 We review a district court's denial of a motion to suppress evidence to determine whether the court's finding that the officer involved had a particularized suspicion to justify the investigatory stop is clearly erroneous. *State v. Steen*, 2004 MT 343, ¶ 5, 324 Mont. 272, ¶ 5, 102 P.3d 1251, ¶ 5 (citation omitted). Findings of fact are clearly erroneous if they are not supported by substantial evidence, the district court misapprehended the effect of the evidence, or the record shows that the district court committed a mistake. *State v. Eixenberger*, 2004 MT 127, ¶ 13, 321 Mont. 298, ¶ 13, 90 P.3d 453, ¶ 13.

## DISCUSSION

3

¶8 Britt contends that the District Court erred when it denied his motion to suppress evidence because Deputy Reichelt did not possess the necessary particularized suspicion to justify an investigative stop. To determine whether such particularized suspicion exists, the State must show: (1) objective data from which an experienced officer could make certain inferences, and (2) a resulting suspicion that the occupant of the vehicle in question is or has been engaged in some wrongdoing. Section 46-5-401, MCA; *Steen*, ¶ 7 (citation omitted). "Whether a particularized suspicion exists is a question of fact dependent on the totality of the circumstances surrounding the investigative stop." *Steen*, ¶ 7 (citation omitted). We evaluate the totality of the circumstances by considering the quantity, or content, and quality, or degree of reliability, of the information available to the officer. *State v. Gilder*, 1999 MT 207, ¶ 11, 295 Mont. 483, ¶ 11, 985 P.2d 147, ¶ 11 (citations omitted).

¶9 We preface our discussion with a comment about Reichelt's testimony that "[t]he driver was a Native American guy and the passenger was [a] little white girl." Reichelt's reference to racial classifications seems gratuitous, at best, in light of the fact that race was not a basis to form a particularized suspicion in this instance. We find no evidence in the record that Reichelt specifically relied on racial profiling to justify the stop of the car. *See e.g. State v. Belgarde* (1990), 244 Mont. 500, 506-07, 798 P.2d 539, 543 (finding that defendant's claim of a police officer's racial discrimination in stopping his car, and the alleged "jail or bail" police policy based on being a Native American, was not supported by any objective evidence in the record). Similar to *Belgarde*, under the circumstances in the present case, Reichelt possessed objective data, other than the fact that the driver was Native American and his passenger was a "little white girl," on which to base his particularized

4

suspicion.

¶10   Britt argues that the objective data Reichelt relied on to form his particularized suspicion does not reconcile with our case law. We disagree. Reichelt investigated a report of a suspicious car parked alongside a gravel road in a remote area. Although Reichelt did not find the car in the precise place it had been reported, he did locate it in the general vicinity, and it matched the reported car's license plate numbers. When the car's occupants saw Reichelt and his patrol car, they pulled out from their parked position and drove toward town. Reichelt conceded that he did not specifically observe the occupants switch places. Nevertheless, he did not consider the brief moment of time when he lost sight of the car to be long enough for the occupants to stop and switch drivers. He therefore inferred that the switch must have occurred while they were driving. Reichelt's observation of the car drifting to the middle of the gravel road corroborates his inference that the occupants had switched places while driving. Thus, Reichelt testified, that he believed, based on his 27 years of experience in law enforcement, that the parties switched places when the car drifted to the middle of the road. In any event, Reichelt saw the man driving when he met and passed the car and when he pulled up behind them he "could see that they had switched drivers and [the woman] was driving."

¶11   Britt counters that enough time elapsed when Reichelt lost sight of the car to allow the occupants to stop and switch drivers, which in itself would not be an unlawful action. Britt points to testimony and pictures presented at the hearing that demonstrate that the shelter belt of trees blocked Reichelt's view of the vehicle once it turned east toward Havre. Indeed, the District Court concluded that when the car turned east, Reichelt "had to lose sight

5

of them for a short time, perhaps even time for them to stop the car and change positions." The District Court did not consider the lost sight to preclude Reichelt's particularized suspicion, however, and instead noted that Reichelt's concern "about the behavior when he saw the car swerve and travel in the middle of the road[,]" along with his observation that the occupants switched positions provided enough data from which Reichelt could make certain inferences. We conclude that, under the totality of circumstances, Reichelt had enough facts at his disposal to satisfy the first prong of the particularized suspicion test. *See e.g. State v. Fellers*, 2004 MT 321, ¶ 23, 324 Mont. 62, ¶ 23, 101 P.3d 764, ¶ 23 (holding that a report of suspicious activity, along with knowledge of the reported car's description including a partial license plate number, and the officer's observation of the reported car, constituted enough data, under the totality of the circumstances, to find particularized suspicion to conduct an investigatory stop).

¶12    We next must determine whether, based on the objective data and using knowledge gained from his 27 years of experience, Reichelt could have formed a resulting suspicion that Britt was or had been engaged in some wrongdoing. Reichelt testified that the switch of drivers led him to believe that "the person who was driving probably should not be driving." Relying on Reichelt's experience that people switch places when someone is not supposed to be driving due to some problem, such as a suspended or revoked license or intoxication, the District Court agreed that Reichelt had the factual basis necessary to justify the stop. We previously have held that to have "a particularized suspicion does not require certainty on the part of the law enforcement officer." *State v. Farabee*, 2000 MT 265, ¶ 19, 302 Mont. 29, ¶ 19, 22 P.3d 175, ¶ 19 (citation omitted). The District Court concluded that

6

although Reichelt "couldn't be sure of reasons, he had the factual basis for the stop and inquire of the occupants." The District Court further concluded that Reichelt considered "all the circumstances available to determine that the occupants of this car had done something they didn't want him to discover." We agree and conclude that under the totality of the circumstances in this matter, and based on Reichelt's 27 years of experience, Reichelt had enough particularized suspicion to justify the investigative stop.

¶13 We conclude that the District Court did not err when it denied Britt's motion to suppress evidence based upon Reichelt's particularized suspicion to justify an investigative stop. Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE